May it please the Court, I'm Diana Vogt of Sherrod's Bruno & Vogt, and I represent Richard Bud and Lloydine Steen. They were the plaintiffs and now are the appellants. The action was brought in the Iowa District Court to seek recovery for legal malpractice committed by attorneys with the law office in Nebraska who drew up legal documents for Iowa. Our issue here is that venue was in fact proper in the Iowa court and the Iowa court erred by saying the venue was improper and transferring it under Section 1406A to the District Court for Nebraska. Why does the Iowa statute of limitations produce a different result? Yes. Yes, Your Honor. Well, if you'd ever explain why. Oh. In pages and pages of briefs, you leave me curious. The Iowa statute of limitations, and I will admit that having read it several times, I am not absolutely certain whether it's six or ten years, but it was brought in Iowa within six years. The Iowa statute of limitations depends on how you characterize the underlying cause of action as tort or contract, and since you could argue either way for this, but it was brought within the shorter six years of the Iowa statute. The Nebraska statute of limitations is only two years. Do Iowa lawyers face a ten-year statute of limitation on malpractice claims? In certain types of claims, yes. And we believe that that's one of the reasons why Iowa's interest, or Iowa has so broadly expressed its interest. But to get back to the venue issue, the point of venue is to keep people from being hailed into somewhere where it's inconvenient and unfair. One thing you are not going to hear the defendants argue here today is that there is any reason, other than the technical reasons that they derive out of Woodkey v. Dahm, that the case should be in Nebraska rather than Iowa. The Iowa citizen carries the Iowa malpractice statute on his or her shoulders when they walk across the Missouri River into Nebraska, is that to grab them under the footwear? No, actually. Our argument is that when they reached out and prepared documents to be filed in Iowa representing Iowa citizens on both sides of the transaction, documents which were to handle a real estate transaction involving exclusively Iowa real estate, that the Nebraska attorneys stepped in and subjected themselves to the Iowa statute of limitations. This contract was in part to avert a foreclosure on the whole farm or something like that? Yes. Which involved a federal party, didn't it? There was some conversation between the law firm and I forget exactly which federal agency that was about to foreclose, but both the purchase... Farm Credit Services. Yes, Farm Credit Services. It's a federal institution, it's not an agency. And they were going to foreclose. But both the selling party and the purchasing party, both of whom were represented by the same law firm, were both an Iowa corporation and Iowa citizens. And we believe that in this case, this court should follow the line of cases of Setco v. Robbins and Pecora v. Sky Ranch, rather than the case line following Woodkey v. Dom. Which case is older? Woodkey is one year newer than Setco, but Pecora v. Sky Ranch, I believe, is the newest of the three. So this conflict isn't waivable if the parties are agreeable, is that right? Well, if it had been disclosed, it would have been waivable. It was an undisclosed conflict. And as it turned out, the contract did not include a provision that the Steens had specifically required be in the contract which would allow them to buy back the land. When they had the money to buy back their land, which was part of a family farm that had been in the family for generations, they discovered that there was no buyback option. They litigated in Iowa, and they lost on the basis of that there was no provision for that. If there was supposed to have been a provision, they could buy it back at a certain price or something? I don't know if it was a certain. And in all honesty, Your Honor, I was retained to do the appeal, and I know that it was supposed to contain some kind of a buyback option. But based on the pleadings that I have, my knowledge doesn't go much deeper than that as to the actual contract. But in this case, I think it's easy to see why Woodkey does not apply. When you look at Woodkey, it's very obvious that that case reached the correct decision. There was absolutely no connection between the actions that gave rise to the wrongful act that the Iowa citizen wanted to sue for and what the wrongdoer in Florida was actually doing. In this case, everything that the Nebraska attorneys did was aimed and directed at Iowa. In fact, this is rather an unusual situation in that if you go through the personal jurisdiction analysis, which although defendants say it doesn't apply, this Court has held in Dakota Industries v. Dakota Sportswear, that if personal jurisdiction exists at the beginning of an action, then there is no question that venue is improper. And in this case, venue was proper based on all of that analysis. And in fact, it's a much closer relationship than, in fact, it was in, say, Pecora v. Sky Ranch. In that case, a young man was suing for sexual assault, all of which occurred in either South Dakota or Wyoming. The only connection between the ranch or Sky Ranch and the state of Nebraska was that they had done fundraising in the state of Nebraska. This Court said that although it was clear that South Dakota had more substantial contacts, that the fundraising contacts in Nebraska, which had absolutely nothing to do with the allegations of sexual assault, was sufficient to make venue proper in the state of Nebraska. And in this case, all the time I was researching venue, I kept thinking I was missing something because it just seemed that there should be something more on the lines of when you're so close to the border. And finally, I discovered that there was a line of jurisdictional cases, including Myers v. Casino Queen, which was decided by the Eighth Circuit en banc, which held in a jurisdictional context that where business operates near a border and regularly attracts business from the other side of the border, the business cannot use the border as a protective barrier to hide behind if damage arises out of those acts which they choose to perform in the other state. And that's the rule that I think should be applied here to venue. It was very clear that the law firm profited. The attorney who represented or who was in charge of drawing up the papers said that he had represented many Iowa citizens in cases of this type. This would be a situation where venue is being used not as a shield to protect the defendants from unfair and inconvenience, but it's being used as a sword to deprive the Iowa citizens of the right that Iowa has clearly said is important to them. No, Your Honor, he was not. What's the rule there? I'm assuming, I don't know this, that there are members of that firm who are admitted to practice in Iowa. However... I don't know specifically either, but I know they used to be before they... I believe that the attorneys admitted in Iowa at least have to have some involvement. And in the depositions that I read, there was no involvement and the defendants never raised the fact that other attorneys in their firm were actually admitted to practice in Iowa. But I think that that would only support the fact that venue should be proper in Iowa because if they have people in the same firm who are in fact admitted in Iowa, then the mere fact that these attorneys sat in their office in Nebraska while they wrote the papers should not be the determining factor. What keeps bothering me when I think of that is what if someone were admitted in Iowa and they meet with Iowa people and other things happen over there, but then they drive over to Omaha and draft the papers. Does that mean that they've deprived Iowa of jurisdiction even though everything else related to it? Because in this case, all the district court looked at was the fact that when the law firm learned of the conflict, they were sitting in their office in Omaha. And when they drafted their papers, just the scrivener's function, they were sitting in their office in Omaha. They overlooked the fact that they prepared documents which were recorded as a public record in Iowa. Both clients, the purchaser and the seller, were in Iowa. The farmland was in Iowa. And also, this is a distinction in all the cases on venue that I could find. This is the only one dealing with attorney malpractice in which state that should be in, in which the underlying malpractice dealt with a piece of real property. I thought the facts of this case, didn't your clients come to Omaha for a conference with this attorney? I believe that they did come to Omaha for a conference. And so there was more than just the drafting and mailing it. There was all sorts. Yes, and I would assume that there were multiple conversations because usually working out the details of a real estate transaction, particularly a complicated one involving a buyback option and a large piece of farmland worth about a million dollars, would involve a lot of give and take with both the purchaser and the seller. The property interest here is damages, right? There's not a claim to get the land back. No, that is gone. They are now seeking damages. But the real property... So when we look at the statute and consider property, we should be thinking about damages, not where the land is, right? You know, I can definitely see how the law could be read like that, but in all honesty, I just cannot feel that. I mean, the damages are more than just monetary. This had been in their family for years. Their whole goal in going to this law firm was to be able to purchase it back. So I think that we have to consider that real property was involved because even though now the only thing that they're entitled to get is monetary damages, they were in fact damaged. What did AGR Keyst pay for it? I do not know. You say it's millions now, but is that because of the appreciation of the land? I don't know, Your Honor. And I also believe, although I'm not certain on this, that AGR Keyst actually bought more than just this one parcel, but the buyback option was supposed to address this parcel, but I'm not absolutely certain on that fact. And I'd like to reserve the rest of my time for rebuttal. Thank you. Mr. is it Papick or Papick? Papick. May it please the Court, Ms. Vogt, good morning, Your Honor. I represent the law firm of Lamson, Dugan & Murray, Robert J. Murray, and Ryan Vo. I'd like to start by talking about some of the facts in this case as Ms. Vogt touched on what she perceives to be connections to Iowa. And I want to just go through facts that are recounted in Mr. Murray's affidavit. Mr. Murray was working with plaintiff's lender, as Judge Loken noted, Farm Credit, to try to avoid a possible foreclosure. And in the course of that, he receives, I don't know that it's clear who made the call, but a telephone call takes place where he learns that plaintiffs have entered into an agreement with AGR Keyst to sell their land. He then calls the Farm Credit rep that he'd been dealing with, a person that's in Lincoln, Nebraska, and works out an arrangement with them where they will forbear foreclosure for 20 days while this agreement is worked out. Mr. Murray then directs Mr. Boe, then an associate in his firm, to draft the documents reflecting this transaction, and all of the drafting for that transaction takes place in their offices in Omaha, Nebraska. The agreements also called for closing of the transaction to take place in Omaha, and both Mr. Murray and Mr. Boe testify in their affidavits that no one, neither they nor anyone else in the firm, traveled to Iowa in the course of the negotiation or documentation of this transaction. With those facts in mind, it is our argument that this court's opinion in Woodkey dictated the transfer of venue issued by the United States District Court for the Southern District of Iowa. Woodkey, I would argue, establishes two things for purposes of determining. Can I ask a preliminary question? Sure. Ms. Vogt says that Setco was decided first and undermines Woodkey. She did say that, and I would say one immediate response to that is that Woodkey cites Setco. So I don't think you can say that these are parallel lines of authority that we have to choose between one or the other. Yeah, I guess that's my question. Are they inconsistent? I think that you can make a distinction between the two. Woodkey, they're arguably inconsistent in that Woodkey is fairly specific in saying, in assessing venue, we look solely at the acts of the defendant, where was he when the alleged bad acts took place, and we look solely at the wrongful acts. So we don't look at acts that may have been necessary to the cause of action in a causal sense but weren't in and of themselves wrongful. Setco is a case where the court found venue present when the defendants engaged in a transaction that violated a court order issued by the Western District of Missouri. The Western District of Missouri had enjoined any sale of particular assets, and the defendants in that case engaged in a transaction that was alleged to be fraudulent and in violation of the court's order. In that case, I think you could, and the plaintiff, or excuse me, the defendant, argued that venue was improper because the actual fraudulent transaction took place in a district outside of the Western District of Missouri. But I would argue in a case where you're dealing with a court order, in a sense the transaction did take place in the Western District of Missouri because the assets are under the control of the court. Setco does not address the issue that's very clearly addressed in Woodkey that I just mentioned earlier, that we look solely at the acts of the defendant and that we look solely at the wrongful acts. While we're on the subject of possible distinguishable cases, I'd also like to address the Picaro Ranch case. Ms. Vogt mentioned that that did follow Woodkey. I believe it was a 2003 case. But I think that case is entirely distinguishable. For one thing, there's very little analysis of the venue question. There's fairly extensive analysis of whether personal jurisdiction was present. The venue analysis merely follows that. But more importantly, as Ms. Vogt noted, the Picaro Ranch involved a case where a priest or a worker of a camp was alleged to have molested children. And then the question is whether the District of Nebraska could have venue. If you read the case, however, it's also alleged that the defendant is alleged to have traveled to Nebraska and kidnapped the plaintiff. And the court says, well, tortuous acts committed in the jurisdiction clearly establish personal jurisdiction. Then when you go down to the venue analysis, all the court says is based on the discussion above, a discussion that included the fact that the defendant traveled to Nebraska and kidnapped the plaintiff, finds venue present. I would argue that that case is entirely distinguishable from this case. Getting back to Woodkey, however, if we're looking at solely the defendant's acts and solely his wrongful acts, I think you'll find Judge Pratt's opinion in the district court instructive where he looks at the alleged wrongful acts are the drafting of the documents. Where were these documents drafted? They were drafted in Omaha, Nebraska. Plaintiffs are trying to aggregate as many effects, I would argue, that they can establish in Iowa. But Woodkey establishes, and this court's opinion in Wisland established, that effects don't establish venue. We're looking at the acts of the defendant, the wrongful acts of the defendant, and where they took place. I'd also like to briefly address the argument that Ms. Vogue made about that defendants will make no argument about inconvenience or unfairness. And she argues that venue is solely concerned with a defendant being inconvenienced by having to travel a great distance to adjudicate a dispute where they have no connection with that forum. And it wouldn't apply in this case where Iowa and Nebraska are close. I would argue that if that's the standard, the judicial districts that are established in this country quickly lose any meaning, and it just becomes a matter of is this close enough to establish venue. Once the court transfers the matter to the District of Nebraska, defendants move for judgment on the pleadings on the grounds that the case is barred by Nebraska's statute of limitations. That is the other issue presented in this case. The District Court found that Nebraska's two-year statute of limitations barred the claim, first concluding that Nebraska's statute of limitations applies. Well, you skipped over something that seems to me is pretty important, and that is the standard for re-evaluating in the District of Nebraska. A re-transfer case? Yes. Now, the District Court said it's a clear error standard. Under law of the case. And Judge Pratt reasonably applied the law regarding transfer venue. Is that the standard we apply on review? Has the 8th Circuit addressed that question? My understanding is, and I'm not going to be able to say. Clear error is a funny standard for an issue of law. Yeah, it would normally be, clear error would normally be an issue, a standard review applied to a factual issue decided by a jury or a finder of fact. I don't know for certain. If we review, I mean, we don't just leap in as the appellate court of the Southern District of Iowa's decision, right? The District of Nebraska does not, I would argue. I don't know whether it's. Neither do we. I think that's true. This isn't an appeal from that order. I understand, I understand. And so there's a heightened. If that retransfer decision is correct. Right, right. Then the only thing before us is where you were going, which is to the limitations issue. Right. As for the standard of review, I don't know whether it's properly articulated as clear error. But clearly under law of the case, it's some form of heightened standard beyond de novo review. Of course, law of the case is not a horizontal concept. It's a vertical concept. For example, a district court that has denied a motion for summary judgment can later grant it. Right. It's not bound by the law of its own case. There is authority. It's a funny use of law of the case. Have you researched whether there are circuit court opinions on this retransfer standard of review issue? I have not, and I can't cite chapter and verse. But I think the point you make is a good one, that the issue. No, I mean, it knocks out what Ms. Poston-Council wants to talk the most about, which is the Southern District of Iowa blew it. The order under review is the order from the District of Nebraska. And I think you certainly couldn't apply a more searching standard of review than it could. And so I would argue that that is an additional reason that knocks out the transfer issue. As for the statute of limitations issue, it presents a choice of law issue. Nebraska distinguishes between substantive issues and procedural issues for purposes of choice of law. It has categorized statute of limitations as procedural, and the choice of law rule is that for procedural issues, Nebraska applies the law of the forum state. Once this case was transferred to the District of Nebraska, Nebraska is the forum state, and Nebraska's statute of limitations should be applied. Plaintiffs argue that rather than that straightforward test where you simply follow the law of the forum state under Nebraska's choice of law rules, you employ a most significant relationship test identified in the restatement. I would argue that that is not consistent with any opinions you would find in the Nebraska Supreme Court. There is an opinion by this court that's addressed in our brief, FDIC versus Nordbrock. It's somewhat difficult to understand what exactly the court was doing in that case. There is some discussion of... It was a case brought under FIREA. It was some discussion of whether Nebraska's statute of limitations or Illinois' statute of limitations should apply, even though it was brought under federal law. While the court applied some form of a most significant relationship test, the concurrence found that the only way that you could really understand the court's ruling was that they were actually applying federal choice of law standards rather than Nebraska choice of law standards. For that reason, I would argue that Nordbrock is inapposite to this case. And even if it were on all fours, Nordbrock is inconsistent with prior Eighth Circuit opinions cited in our brief, where the Eighth Circuit is applying Nebraska's choice of law rules and in the same straightforward fashion analyzes what state are we in. We apply the law of the forum state. That same formulation has been followed by the District Court for the District of Nebraska in other cases. It was followed in this case. And the District of Nebraska in other cases have also reached the same conclusion that we argue in our brief, that the Nordbrock case is really difficult to understand and is probably best understood as an example where the court was applying federal choice of law standards rather than Nebraska's. Those are the issues that I intended to address, and if there are no further questions from the court, I would ask that the dismissal by the District Court of Nebraska be affirmed. Very good. Thank you. Ms. Boak, do you have some time? Your Honor, I would like to start first with the question about the standard of review. Actually, the Iowa court's order is on review. The United States Supreme Court has held that wrongly decided transfer motions may be asserted as grounds for an appeal from a final judgment. Even though the law of the case may preclude a transferor district court from reviewing a transfer order, an appellate court can review the transferor court's decision on venue in an appeal from a final order. So the order on... Where is that? It's on page 10 of my brief. There are very, very few cases on that, Your Honor. I mean, what... But I did find one in the United States Supreme Court, and then the Second Circuit and the Third Circuit have addressed it. So it was not a final appealable order when it was entered by the Iowa District Court. However, once there was a final order entered by the Nebraska District Court getting rid of that case, then the transfer order is appealable. So regardless of the standard of review for the district court, which I have to admit, I agree with Mr. Papich, is not well established, the cases looking at the instances where retransfer has been requested are very few, and they require high deference because they are corollary courts at the same level. So one court is very hesitant to overrule another court when they're not sitting as an appellate jurisdiction. But in this case, we think that at the very least, what the court should have done if it kept the case was to accept it under 1404A rather than 1406 and say, well, okay, we're going to take the case. Well, that's reversing Judge Pratt. It's actually not reversing. It's just looking at it slightly differently. I mean, we can look at it as reversing. But it was . . . His analysis was it can be in more than one district. That's 1404A. He said, but this one's not. This one's not here. And he was wrong. Okay. Now you're saying that, well, Judge Smithkamp erred even though nobody ever reviews these things. You can't have . . . It's inconsistent. Now, what's our standard of review? Your standard of review is de novo. And so you can look at . . . Venue ruling? Yes. It's a question of law. When it's decided as it was by the Iowa District Court, it's a question of law. And your review is de novo. Thank you. Thank you. Thank you, counsel. The case has been effectively argued. Unusual. We'll take it under advisement. Does that complete . . .